is 14-1271 In Re Stoller. Are you ready? Yeah, I'm sorry, ma'am. It's all right. May I please the court? This appeal relates to an application filed on behalf of James E. Stoller. A scrim layer is used in this application as part of a winter turf cover for a golf green. The scrim is defined on JA-12 of the Joint Appendix in the last five lines as an open-weed fabric embedded in the rest of a polymer film. No reference applies to the claims, contains a scrim structure, let alone a water impermeable scrim structure in a cover for a golf green. This is very important because there's a big problem in golf greens called crown hydration. If water contacts the golf green during the winter months and repeatedly thaws and refreezes, this causes the crown hydration, which destroys the golf green and requires replanting of the golf green. So a product that can do this offers great advantages. In the prior I'd applied to this application, only a patent issued to the same James E. Stoller and the other problem addressed in this application. Can I just focus you on Claim 35 and the 102 issue? What is your definition of laminated? Did you give us your definition in your brief or did you as presented to the patent office? I gave the definition of the brief as a complete lamination. I gave the claims and the specification of the instant application. I noticed you said complete lamination. Are you distinguishing between complete and partial and if so, what is covered by the claim? Say again please. What is your view of what is covered by the claim? A complete lamination is covered by the claims because Exclusively so that the claims would not cover a partial lamination but only a complete lamination. And this is true because the claims and even Claim 35 says that the cover is water impermeable. If it's partial lamination, it is not water impermeable. In other words, water can penetrate the cover between the partial laminations and that causes a great problem for the idea and the prevention of the ground hydration to which the instant application is directed and to which the only other reference of record directed to ground hydration is Mr. Stoler's own patent, the 08 patent. So the Civet patent and the Simmons patent are not directed to ground hydration. They admit, they say they can cover a golf green, but their coverings would not provide or prevent ground hydration. The structure is completely different, completely unrelated to the purposes taught by Mr. Stoler in his application and in his prior 08 patent which is incorporated in the present application by reference. So that is the difference there. Also, did I answer your question, Your Honor? Yes, proceed. Okay, thank you. This particular application offers an improvement over the Stoler 08 patent in that Stoler 08 requires a center layer having cross laminations. In other words, he orients the two layers and he sets the layers at 90 degree angles to achieve the strength of the center layer. This instant application replaces that difficult structure with the scrim, the open weave fabric embedded in a resin or a polymer. And this replaces the scrim and replaces the orientation and makes it much easier to manufacture. On the first appeal to the patent office trial and appeal board, the examiner was affirmed, but the patent and trademark office trial and appeal board cited as a 112 rejection and I responded to the 112 rejection before the examiner and amended the claims to the point where the 21 to 37 that are now in the case that got us around the 112 rejection. Usually, in my experience, when the 112 rejection is overcome, you also overcome the wild freeze. This did not happen this time and that's why this appeal was taken. The rejection of the instant claim... You just said does disclose lamination, doesn't it? Yes, ma'am. Your argument is that Civet doesn't, right? Civet does not and neither does... Simmons? Simmons. You don't think Simmons expressly talks about lamination? It discloses lamination, but it does not have a complete lamination and does not teach water impermeability and the prevention of crown hydration. Okay, but Simmons does disclose lamination. It uses that word repeatedly. I don't understand your argument why it doesn't disclose complete lamination. That is very easily answered. But Stoller does. The 088 does disclose exactly what you define the lamination as, correct? Right. Okay. Let's say Simmons does that. In the Simmons reference, on JA42, column 3, line 34... Yes. ...goes so far as to say this process is laminated, but, and I repeat but, for the special steps taken by controlling the lamination temperature. Wait, I'm sorry. Where are you? I'm on page, column 3, line 34. 34. You're saying they're not laminated because they're easily and readily delaminable? Yes. The fact that you can peel them apart, my driver's license is laminated, but if I took a razor blade, as 18-year-olds are known to do, to try and change their age to 21, I bet I could peel that apart. It doesn't make it any less laminated. Yes, but if you take the razor blade and separate the laminations on your license, you will not have a water impermeable license. Any longer, but you did before I peeled it apart. That's right. So you can, Simmons does disclose something that is laminated until such time as it's peeled apart. And he specifically defines it to be peelable, and does not disclose that his lamination is water impermeable and does not disclose that his lamination can't be treated, used to protect the ground cream from crown migration. Your claims, though, they don't talk about water impermeability. Yes, they do, sir. They don't really talk about preventing. Well, I'm just looking at... But they don't, I guess my point is the lamination itself isn't tied to something that's a water impermeable lamination. Well, Claim 35 of Section E says that when it's prepared to cover the water impermeable... What page are you referring to? I'm looking at part of the J206 from the brief for the appellant. Claim 35 says water impermeable. Claim 35 says laminated. And Civet does not say that. There's only a 102 rejection over Civet. Civet lacks lamination. It lacks water impermeability. And it's not laminated. Civet cannot anticipate Claim 35. Should I proceed? Sure. Okay, thank you. Like we discussed, Claims 21 to 37 are on appeal from the application. All claims stand rejected. Claim 35 was rejected under 35 U.S.C. 102 anticipated by Civet. Claims 21, 38, and 36 are rejected under 35 U.S.C. 103 as unpatentable recipients. Claims 22, 29, 30, and 37 are rejected under Civet in view of stolen tank with Simmons. And the Claims 23 to 27 and 31 to 34 stand rejected under the same three references as Powell added. Simmons is partial lamination. It specifically disclosed partial lamination. Civet does not disclose lamination. Civet does not disclose scrim. The only reference to scrim layers is found in my client's application on appeal. What's the difference between a scrim layer and a fabric sheet? Say that again, please. What's the difference between a scrim layer, as recited in the claim, and, say, fabric, which is recited in, say, Simmons? The scrim layer is defined as an open-weave fabric embedded in a resin or a polymer. So it's different than a fabric sheet because it's embedded in a resin. In other words, the resin completely encases the layer. What is it in the claims or the specification that forces me to understand scrim layer in a way that's separate and apart from a fabric sheet? Scrim. The scrim layer is... Okay, you're looking for something in the specification. Well, yeah, I see it, joint appendix, page 12. Say that again, please. Joint appendix, page 12, which is page 5 of the written description of your application. Towards the bottom, there's a sentence that says, typically, the scrim has an open-weave fabric embedded in a resin or a polymer film. Which results in the desired characteristics of the way the golf game cover is formed. And one could argue that that's not really demanding or specific enough to require an interpretation of scrim so that it must have an open-weave fabric embedded in a resin or polymer film when the specification uses the word typically. Typically, but in other instances, it doesn't need to be what the disclosure just described. Yes, but the scrim is defined further in the patent referred to above. And without the scrim open-weave fabric being embedded in the polymer, no such water impermeability can be achieved. So this is the purpose of my argument, and I'm going to reserve the rest of my time for rebuttal. Okay, all right, thank you. Thank you. May it please the court, as Judge Moore noted during the previous questioning, the term laminated can describe a very broad array of structures. Anything from a laminated countertop, where all the layers are directly connected together, to something like a laminated ID card or photograph, where the edges of the card or photo is fastened together with the laminated material. Thus, the board was correct to construe it broadly in this case. So you're talking about civet now in the 102 reference because civet doesn't use the term laminated, does it? Civet does use the term laminated in the background section. As the examiner found in the examiner answer, civet discloses that it was known in the art to be able to laminate sheets together in ground covers, because civet discusses Simmons in the background. So civet discusses the fact that Simmons laminates, correct? That's correct. And it never, ever refers to its own method of connecting or fastening as lamination, does it? No, that's not correct. It's not correct? That's not correct, because civet then goes on to discuss a method of lamination. Where? The looped ropes and... No, tell me where it uses the word laminate. I said it never discusses or uses the word laminate to describe its own method of connecting or fastening, does it? It doesn't ever use the word laminate, correct, but it does... It uses the word laminate to discuss what Simmons does, but it never, in contradistinction, uses the word laminate to discuss what it does. What words does it use precisely to discuss what it does? Fastening. I believe it uses the word fasten. Fastening or connecting, right? That's correct. It uses, if you look at JA59. I'm in column, I'm looking at the patent. So, page 58. On JA58, it talks about Simmons in the background there. And then if you look on page JA59, civet talks about the assembly having the second cover secured with the first cover using a fastening means and describes that fastening means as being a plurality of grommets and a corresponding... And I'm looking at paragraph 29, sorry. And it also discusses a corresponding plurality of looped ropes that are fixed along the outer edge of the first cover. So you think that ropes and grommets, which let's just think of as like sewing almost, right? Like say you have a bean bag, two pieces of fabric. You know what a bean bag is, right? Like the little thing you would use, what is that game? Cornhole, right? I don't know if you've ever played that game. Bean bag, two pieces of fabric. The edges of the fabric are sewn together so beans can be stuffed in the middle. You're going to tell me that that sewing of those two pieces of fabric together amounts to laminating them together? Under the broad definition of lamination used by the board in this case and also proffered by stolen... Okay, well that's important. Hold on, that's important to me. Where can I find the board's definition? Because it's not in the opinion on appeal. So the board's definition is set forth in the first decision from the board. How do we deal with that, right? The first decision of the board is not on appeal to us. Am I to assume the second decision used that construction, never having mentioned it or referring to it at all? Yes, I believe that. Okay, so I'll assume that. The first construction is on page 144 in footnote one. That's correct. Okay, now your problem is, and this part kind of bothers me. Did you get the heritage dictionary and look up the word laminated? Because you know what, that's not what it says. I have it here, the exact one, 2007. Let's look it up. See, when the board writes this, I would expect this reference to say this, wouldn't you? I believe that they, I would, and I believe that they set it to the webpage. Yes, that's... And not to the actual dictionary itself. Well, no, it's the American Heritage Dictionary, 2007, available at this webpage. I just have the print version. I assume that the 2007 version of this page is identical, wouldn't you? I wouldn't necessarily... I've looked at every version, 2000 to 2014, and they're all identical with regard to the word laminated. Okay, so unless you want to submit something to this court that shows me later that the 2007 version available on this website, which is not accessible to the public, by the way, is different than what I'm about to read to you. So let's go to the word laminated. The word laminated in the 2007 version of the American Heritage Dictionary is defined as following. Number one, composed of layers bonded together. Number two, arranged in laminate. That's it. So composed of layers bonded together. What is the important thing in that definition that's missing from the board's construction? Well, I believe the board not only relied on its own definition. In JA-5, in the board's decision, it said even going with Stoller's more narrow definition of laminated. Okay, you're not answering my question. I said, what's the important thing I just read that's not in footnote one? You're trying to jump ahead and tell me why it's not wrong that they, misrepresented the definition from the American Heritage Dictionary or inadvertently left out an important element that's directly relevant to this case, right? It's the bonded, right? Bonded. And if you, just out of curiosity, look up the word bonded in the same dictionary, it says chemically affixed, just so you know. It says joined together by chemicals. So how now is the grommet and the rope along the edges laminated according to the American Heritage Dictionary that was adopted by the board? That's the perfect definition for the word laminated. Obviously, you were not prepared for this. And I do not blame you. You probably believed that if they cited a dictionary definition, they were citing it accurately. I believe that it may not, the grommet and the looped rope structure may not be bonded. That's correct. But the definition of one of ordinary skill in the art would understand what laminated is from the Simmons reference. Simmons reference also talks about lamination. Do you think one of ordinary skill in the art would understand the word laminate to include my bean bag, which is two pieces of fabric sewn together all along the edges to be stuffed with beans. Do you think one of skill in this art would say that bean bag is laminated? Two pieces are laminated to each other. I think if the two pieces are sassened together, directly connected together to create a seal around the edge, then that would meet the definition of laminated. Like I said, laminated is a very broad definition. As set forth both in the Simmons reference, it talks about mechanical pressing pressure as a way of laminating. And so it may be on the very outermost edge of that broad definition, but it could fall in the ambit of that broad definition. But more importantly here, nowhere in the specification did Mr. Stolar... But this isn't pressing either, right? Pressing would be causing to fuse together by virtue of pressure. Like if you put two pieces of metal in a vise, crank it up so they're smushed together, uncrank it, take away the pressure, they're still held together. That's the kind of pressing that causes the lamination at issue. How is the grommet and the rope like that? How is that laminated through well? The looped rope, as it's passed through the other looped ropes and the grommet, provide a pressing force to each other to close and seal the edge of the turf cover as it's closed in civet. In civet, it's stuck with straw, right? In civet? One of the... So I'm thinking scarecrow. So Mr. Scarecrow's got a shirt. Mr. Scarecrow's shirt, as you can imagine, the front and the back are sewn together, as are the arm holes so that all that straw will stay inside. I have never heard a scarecrow referred to as laminated. How about you? I can't say that I've heard of a scarecrow as being laminated. However, the board still found that the grommet and loop structure, which provides the pressing force which closes the turf cover, prevents the straw from coming out and still provides water and permeability over the ground and prevents the premature rehydration of the ground. Why isn't the examiner automatically lodging an obvious rejection in a case like this? You've got him on record today saying Stoler 088, which is prior art, discloses lamination. If that's the only thing arguably missing from CIBIT, this would have been such an easy obviousness rejection, don't you think? It would have been a very easy obviousness rejection. However, the breadth of the claim, Claim 35, it's very broad. But it does include laminate, and the only reference you cite only refers to laminate as what somebody else is doing in their process. That's the problem. This anticipation rejection is overreaching. That's the problem. However, the CIBIT reference, even if you don't buy the grommet and the looped ropes, it still discloses that it was known in the art to skilled artisans that you could laminate together two sheets of material in order to create a ground cover when it discusses the Simmons reference in the background. So the reference still discusses lamination. And haven't we often held that anticipation of a reference can't be satisfied by combining elements from one embodiment with elements from another in order to get the claim convention under an anticipation theory? Haven't we held that? The Texas court has held that before. So wouldn't that, what you're asking me to do, be akin to that? I don't believe so, because what this teaches is... Oh, you don't think so. You think that when they use the word laminate in Simmons, if I don't buy that CIBIT itself discloses laminate, I can peel the laminate, no pun intended, out of CIBIT and put it into the embodiment otherwise held together by a grommet and rope? I think that in this case, it's clear that one of the skills in the art, reading that, would be able to go to Simmons from this disclosure in CIBIT. It's clearly pointed to, it shows where it is in the prior art. And so that disclosure as a whole still teaches... I agree that it would have been a better obviousness rejection. However, I still believe that you can uphold the anticipation rejection here. Why don't examiners just automatically... Aren't you supposed to bring every possible ground of rejection when you reject something? So every time you bring anticipation, why not as a CYA just bring obviousness too? I mean, wouldn't that be a cut and paste? I'm not sure why the examiner did not do that in this case. I think probably the breadth of the language of Claim 35 was enough to support the anticipation rejection. Mr. Stoller was also discussing that he believed that you needed complete lamination and that the scrim sheet is what made the invention and recited turf cover to be water impermeable. However, this language is not in the claims itself and the specification itself is broader than those statements. If you look at... Well, for that matter, CIBIT discloses a moisture resistant material being used, doesn't it? I mean, wouldn't that satisfy the impermeable limitation? That's correct. CIBIT does, the polyethylene and polyolefin sheets in CIBIT... It explicitly says, quote, is a moisture resistant material. That is correct. It sounds like water impermeability to me. I mean, I don't know what... No, no, I think that's absolutely correct and I think that you can use that to affirm the rejection. However, I think Mr. Perone's argument was that it was the scrim sheet that provided the water impermeability, not the top sheet. And I wanted to respond to that briefly. If you look on page JA14 of the specification, it does state toward the end of the page in the final paragraph, the scrim layer may be replaced by another desired reinforcing layer. However, the scrim layer is the most efficient reinforcing layer. In some cases, the scrim layer and an impermeable layer may make a suitable turf cover. So the... So CIBIT's disclosure that the poly whatever layer is close to water impermeable with different words is close enough to meet that. I think that's correct and I think that both the language in the specification is broader than what he is trying to re-import into the language of the claims and the language of the claims itself don't say what makes it water impermeable. It doesn't say that the scrim layer itself makes it water impermeable. Thank you. I believe that the panel has an understanding of the issues in case you have any further questions. Thank you. We have a little bit of time left. May I please record? CIBIT does not relate to the lamination article. CIBIT has a plastic sheet, an open leaf sheet below and straw in between. That sheet is not water impermeable. Without the straw in there, CIBIT does not work. Well, CIBIT actually expressly discloses that the embodiment of the straw is optional. So you can't say without the straw it doesn't work. No, I disagree, Your Honor, because it does say the straw can be removed for storage. It doesn't say it can be used without the straw. And even if it is used without the straw, it is still not water impermeable because the open leaf fabric attached to the bottom. What about the moisture-resistant layer, the material, the moisture-resistant material? That doesn't say water impermeable, and that does not say the structure is... But then aren't you just, I mean, come on, moisture-resistant, water impermeable, really? I mean, it feels like that is the same, or at least it feels like that's a fact-finding that I would have a lot of trouble under a deferential standard of review not giving deference to. Yes, but the CIBIT case with the water, absorbing the water with the straw, does not prevent crown hydration. In the winter... That's not what the claim covers. Say again, please. Claim 35 doesn't cover that. It just says water impermeable. It doesn't cover all that other stuff that you just said. But the structure of the claim being water impermeable leads to the crown hydration protection of the sheet. Crown hydration... It's a structure claim. That's your use. That's your intended use. This is an apparatus claim. It's not a method claim. I understand that, but there are... The water impermeability leads to the crown hydration prevention. There is no reference other than the Stoler Reference 088 that discusses the problem of crown hydration. The application and the Stoler Reference itself allows the crown hydration to be prevented, not the references applied to the claims. There is no crown hydration prevention. There is no scrim taught by any of the references other than my client's references in his statements. I'm going to go. All right. That concludes our proceedings for this morning. The case is submitted. Thank you. Take care. All rise.